[No. B081797. Second Dist., Div. Seven. Jan. 25, 1995.]

TONY S. GOULD, Plaintiff and Appellant, v.
MARYLAND SOUND INDUSTRIES, INC., et al., Defendants and
Respondents.

COUNSEL

William D. Evans for Plaintiff and Appellant.

John H. Lavely, Jr., and Bonnie J. Chermak for Defendants and Respondents.

OPINION

JOHNSON, J.—Plaintiff Gould brought this action against his former employer and two management-level employees after he was terminated as a sales representative. The trial court sustained demurrers to each cause of action and dismissed the complaint. We have concluded some of Gould's allegations state causes of action while some do not. Therefore we reverse the judgment of dismissal and remand the case with directions.

### FACTS AND PROCEEDINGS BELOW

In the discussion below we detail the facts alleged in Gould's complaint. In summary, he alleges Maryland Sound Industries (MSI) discharged him from his employment as a sales representative in order to avoid paying him the commissions due to him and in retaliation for his informing MSI management the company was not paying overtime wages due certain of its employees. Gould also claims there was an oral understanding between him and MSI he would not be discharged except for cause and MSI breached this agreement and the covenant of good faith and fair dealing by terminating his employment for the reasons stated above. According to the complaint MSI has refused to pay Gould the commissions, other wages, and vacation pay he earned prior to his discharge. Finally, Gould alleges he was defamed by statements made by MSI supervisors who accused him of poor job performance and, specifically, making a $100,000 error in an MSI contract bid.

Gould brought this action against MSI and two of its managerial employees for wrongful discharge in violation of public policy, breach of implied-in-fact contract, breach of the implied covenant of good faith and fair dealing, defamation, unpaid compensation and prima facie tort. The trial court sustained defendants' demurrers to each cause of action without leave to amend and entered a judgment of dismissal. Gould appeals from the judgment.

## DISCUSSION

I. *The Trial Court Erred in Taking Judicial Notice of the Existence of a Written Employment Contract Between Gould and MSI.*

Gould's contract claims against MSI are based on allegations he was employed under an oral contract governed by California law. In its demurrer, MSI requested the trial court to take judicial notice Gould was employed under a written at-will contract governed by Maryland law. MSI attached a copy of the purported contract to its points and authorities. At the hearing on the demurrer Gould contended the document was an offer to be employed by MSI which MSI never accepted. He also argued the trial court could not take judicial notice of the purported contract at the demurrer stage to contradict the allegations in his complaint.

The trial court granted MSI's request and took judicial notice Gould was employed under the written contract submitted by MSI. ■ Because several of MSI's challenges to the sufficiency of Gould's complaint are based on the existence of this purported written contract, we must determine whether the trial court properly took judicial notice of its existence at the demurrer stage.

■ It is "black-letter law" a demurrer tests the pleading alone. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 895, p. 334.) "When any ground for objection to a complaint or cross-complaint does not appear on the face of the pleading, the objection may be taken by answer." (Code Civ. Proc., § 430.30 (b).) "[D]efendants cannot set forth allegations of fact in their demurrers which, if true, would defeat plaintiff's complaint." (*Fuhrman v. California Satellite Systems* (1986) 179 Cal.App.3d 408, 422-423 [231 Cal.Rptr. 113].)

■ MSI attempts to rely on an exception to this "black-letter law" for matters which the court is required to or may judicially notice. Code of Civil Procedure section 430.30, subdivision (a) provides, "When any ground for objection to the complaint . . . appears from the face thereof, or from any

matter of which the court is required to or may take judicial notice, the objection on that ground may be taken by a demurrer to the pleading."

Here, MSI requested the trial court to take judicial notice of the existence of a written contract of employment between it and Gould based on Evidence Code section 452, subdivision (h) which permits the court to take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." For the reasons set forth below, we hold the existence of a contract between private parties cannot be established by judicial notice under Evidence Code section 452, subdivision (h).[1]

■ Judicial notice under Evidence Code section 452, subdivision (h) is intended to cover facts which are not reasonably subject to dispute and are easily verified. These include, for example, facts which are widely accepted as established by experts and specialists in the natural, physical, and social sciences which can be verified by reference to treatises, encyclopedias, almanacs and the like or by persons learned in the subject matter. (Comment, Assem. Judiciary Com. accompanying enactment of Evid. Code, § 452, 29B West's Ann. Evid. Code (1966) pp. 351-352.) The statute has also been used on demurrer to take judicial notice of facts commonly known in a community, such as ownership, easements and control over land (*Bethman v. City of Ukiah* (1989) 216 Cal.App.3d 1395, 1399, fn. 4 [265 Cal.Rptr. 539]), and the history and operation of a local museum (*Hardman v. Feinstein* (1987) 195 Cal.App.3d 157, 160, fn. 2, 161 [240 Cal.Rptr. 483]).

■ Here, however, we have a dispute between two parties one of whom claims he was employed under an oral contract and one of whom claims the employment was pursuant to a written contract. Clearly, this dispute cannot be resolved by resorting to "facts and propositions that are not reasonably subject to dispute."[2] As in this case, the "fact" a contract exists between the parties is frequently the subject of reasonable dispute. Furthermore, when

---

[1] Our decision in this case is limited to attempts to establish the existence of a contract under the "indisputable facts" provision of Evidence Code section 452, subdivision (h). This is the only ground urged by MSI and the only ground even conceivably applicable under the circumstances here. We do not rule out the possibility the existence of a contract could be established by judicial notice under different circumstances, e.g., through reference to the plaintiff's pleadings or discovery responses in the same or a different action. (See Evid. Code, § 452, subd. (d); *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 [6 Cal.Rptr.2d 151]; *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 373-374 [228 Cal.Rptr. 878].)

[2] The case relied on by MSI, *Ascherman v. General Reinsurance Group* (1986) 183 Cal.App.3d 307, 310-311 [228 Cal.Rptr. 1], is not on point. In that case, there was no dispute over the existence of the contract alleged in the plaintiff's complaint. On demurrer to the

such disputes arise there are no "sources of reasonably indisputable accuracy" such as treatises or encyclopedias to which the court can turn to resolve the issue. Rather, the court must rely on the testimony of the parties and their witnesses whose perceptions, memory and bias may be the subject of vigorous dispute.

Moreover, before a trial court could find that the existence of a contract was not reasonably subject to dispute the court would have to engage in the kind of fact-finding appropriate for a trial on the merits, not for a hearing on demurrer. While most matters subject to judicial notice can be established by reference to a statute, court file, treatise or other document, a court cannot simply look at a piece of paper and conclude as a matter of law it is a contract between the parties. Here, for example, Gould claims the document MSI contends is a contract is merely an offer by him to enter into a contract with MSI which MSI never accepted. He further contends he is not bound by the terms of the document because he signed it under duress. These contentions raise questions of fact which cannot be resolved at the pleading stage of the case.

We conclude, therefore, the sufficiency of Gould's complaint must be tested without reference to the purported contract submitted by MSI.

> II. *Gould's Claims MSI Discharged Him to Avoid Paying Him Accrued Compensation, and in Retaliation for Reporting Overtime Wage Violations to MSI Management, Support a Cause of Action for Tortious Wrongful Discharge.*

Gould's first two causes of action allege tortious discharge from employment in violation of public policy. (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].) ▮ In the first cause of action Gould alleges MSI terminated him to avoid paying him accrued commissions and vacation pay. In the second cause of action he alleges MSI terminated him in retaliation for his reporting to MSI's upper management that a number of MSI employees were working overtime but not being paid overtime wages. Gould alleges his discharge on these grounds contravened fundamental public policies involving the prompt payment of wages due an employee and the payment of overtime wages to employees who work more than the standard number of hours. MSI demurred to both causes of action on the ground these policies are not fundamental public policies of the type which will support a claim for tortious wrongful discharge.

---

complaint the court took judicial notice of the terms of the alleged contract under Evidence Code section 452, subdivision (h).

■ Wrongful termination from employment is tortious when the termination occurs in violation of a fundamental public policy. (*Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1090 [4 Cal.Rptr.2d 874, 824 P.2d 680].) A policy is "fundamental" when it is "carefully tethered" to a policy "delineated in constitutional or statutory provisions" (*id.* at p. 1095), involves a duty affecting the public at large, rather than one owed to or imposed solely upon the parties to a dispute (*id.* at p. 1090), and is " 'well established' " and "sufficiently clear" to the employer at the time of the discharge (*ibid.*). Wrongful termination cases typically arise when an employer retaliates against an employee for refusing to violate a statute, performing a statutory obligation, exercising a statutory right, or reporting an alleged violation of a statute of public importance. (*Turner* v. *Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1256 [32 Cal.Rptr.2d 223, 876 P.2d 1022].) However, as we noted in *Soules* v. *Cadam, Inc.* (1991) 2 Cal.App.4th 390, 401 [3 Cal.Rptr.2d 6], an action for tortious discharge is not strictly limited to these situations but will lie "wherever the basis of the discharge contravenes a fundamental public policy."

■ Statutory provisions and case law support Gould's contention the prompt payment of wages due an employee is a fundamental public policy of this state. "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." (Lab. Code, § 201.) "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter. . . ." (Lab. Code, § 202.) In *Pressler* v. *Donald L. Bren Co.* (1982) 32 Cal.3d 831, 837 [187 Cal.Rptr. 449, 654 P.2d 219], the court stated, "Public policy has long favored the 'full and prompt payment of wages due an employee.' . . . '[W]ages are not ordinary debts . . . . [B]ecause of the economic position of the average worker and, in particular, his family, *it is essential to the public welfare that he receive his pay' promptly*." (Italics added; citations omitted.) Thus, the prompt payment of wages serves *"society's* interests . . . through a more stable job market, in which its most important policies are safeguarded." (*Gantt* v. *Sentry Insurance, supra*, 1 Cal.4th at p. 1095, italics added.)

Labor Code section 216, subdivision (a) provides any employer who, "[h]aving the ability to pay, willfully refuses to pay wages due and payable after demand has been made" is guilty of a misdemeanor. The Legislature's decision to criminalize violations of the prompt payment policy also supports Gould's contention the policy involves a broad public interest, not merely the interest of the employee. (Cf. *Lazar* v. *Superior Court* (1994) 34 Cal.App.4th 1640, 1653 [35 Cal.Rptr.2d 578] review granted February 23, 1995 (S044234) [criminalization of employment fraud reflects broad public interest].)

From the foregoing statutes and case law we conclude if MSI discharged Gould in order to avoid paying him the commissions, vacation pay, and other amounts he had earned, it violated a fundamental public policy of this state.[3] The trial court, therefore, erred in sustaining the demurrer to the first cause of action.

In his second cause of action, Gould alleges MSI discharged him for reporting to management the violation of overtime wage laws applicable to other MSI employees. Gould does not contend he was illegally denied overtime wages. ■ MSI contends discharging Gould for reporting violation of the overtime wage laws to upper management does not give rise to a *Tameny* cause of action. It argues payment of overtime wages is not a duty affecting a fundamental public interest but a private matter between MSI and its employees. Even if payment of overtime wages is a matter of public policy, discharging Gould did not contravene that policy because Gould was not seeking or entitled to overtime wages and his report of violations to MSI management served only the private interest of MSI. None of MSI's arguments are persuasive.

The duty to pay overtime wages is a duty imposed by the state; it is not a matter left to the private discretion of the employer. (Lab. Code, § 1173; *Monzon* v. *Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 29 [273 Cal.Rptr. 615].) California courts have long recognized wage and hours laws "concern not only the health and welfare of the workers themselves, but also the public health and general welfare." (*California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 703 [74 Cal.Rptr. 313].) In *Monzon, supra,* we observed one purpose of requiring payment of overtime wages is " 'to spread employment throughout the work force by putting financial pressure on the employer . . . .' " (224 Cal.App.3d at p. 39.) Thus, overtime wages are another example of a public policy fostering society's interest in a stable job market. (*Gantt* v. *Sentry Insurance, supra,* 1 Cal.4th at p. 1095.) Furthermore, as we have previously explained, the Legislature's decision to criminalize certain employer conduct reflects a determination the conduct affects a broad public interest. (See preceding

---

[3]We recognize the motivation attributed to MSI seems illogical because discharging Gould would not relieve MSI of the duty to pay the wages and benefits due him. To the contrary, discharging him caused his compensation to be payable "immediately." (See Lab. Code, § 201, quoted *supra.*) Nevertheless, for purposes of demurrer we accept the truth of Gould's material allegations. (*Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d at p. 170.) The tort of wrongful discharge is committed if the employee is terminated for "a *purpose* that contravenes fundamental public policy" (*Gantt* v. *Sentry Insurance, supra,* 1 Cal.4th at p. 1094, italics added) regardless of whether the discharge actually *accomplishes* the unlawful purpose. (*Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290, 295-296 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015].)

page.) Under Labor Code sections 1174 and 1175 it is a crime for an employer to fail to keep or refuse to furnish payroll records showing the hours worked daily by, and wages paid to, its employees. Under Labor Code section 1199 it is a crime for an employer to fail to pay overtime wages as fixed by the Industrial Welfare Commission.

There is no requirement the plaintiff be a direct beneficiary of the policy violated by his or her discharge. Although Sentry Insurance did not discriminate against Gantt on account of his sex, it violated public policy when it discharged him for refusing to give false information to the Department of Fair Employment and Housing which was investigating sexual harassment charges filed by a coworker. (*Gantt* v. *Sentry Insurance, supra,* 1 Cal.4th at p. 1096.) Hejmadi was not strip-searched by his employer, but his discharge violated public policy when it resulted from his complaints to management about illegal strip searches of suspected shoplifters. (*Hejmadi* v. *AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 534, 539 [249 Cal.Rptr. 5].)

Finally, we reject the argument Gould's discharge was not tortious because it resulted from the disclosure of information to MSI which served only the private interest of MSI. This argument relies on *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373], in which Foley was fired after disclosing to upper management that his immediate supervisor was under investigation by the FBI for embezzlement from the supervisor's former employer. Foley contended his discharge contravened a substantial public policy imposing a duty on employees to report relevant business information to management. The court held that even assuming such a duty existed it was not one which sought to protect the public but served only the private interest of the employer. Therefore, the rationale underlying the *Tameny* line of cases was not applicable. (*Id.* at pp. 669-671.) As stated in *Turner* v. *Anheuser-Busch, Inc., supra,* "The tort of wrongful discharge is not a vehicle for enforcement of an employer's internal policies or the provisions of its agreements with others. [F]ailure to identify a statutory or constitutional policy that would be thwarted by [the plaintiff's] discharge dooms [the] cause of action." (7 Cal.4th at p. 1257.)

The present case has public policy implications which were not present in *Foley.* The plaintiff in *Foley* reported on a coworker's possible *past* criminal conduct with a *previous* employer. This is a far different situation from one involving a report of a coworker's *present* illegal or unsafe conduct with the *current* employer. Gould's report was of the latter kind. Gould reported to MSI management that a number of MSI employees were currently working overtime but not being paid overtime wages. Thus, Gould informed MSI about ongoing conduct which was not only inimical to the public health and general welfare but also illegal. (See discussion *supra,* p. 1148.)

Several Court of Appeal cases before and after *Foley* have recognized the tort of wrongful discharge occurs when the employee is terminated for reporting to the employer about existing unhealthful or unlawful conduct.

In *Hentzel* v. *Singer Co.*, *supra*, the court held the plaintiff stated a cause of action for tortious wrongful discharge by alleging he was terminated for complaining to his employer about his unhealthful working environment, in particular, the presence of cigarette smoke. The court reasoned Hentzel's report implicated the public policy interest in a safe and healthful working environment for employees. (138 Cal.App.3d at p. 298.) *Hentzel* was specifically distinguished in *Foley* as an example of a case involving the disclosure to the employer of "illegal, unethical or unsafe practices" (47 Cal.3d at p. 670), and was cited with approval in *Gantt* as an example of "reporting an alleged violation of a statute of public importance." (1 Cal.4th at p. 1091.)

In *Blom* v. *N.G.K. Spark Plugs (U.S.A.), Inc.* (1992) 3 Cal.App.4th 382 [4 Cal.Rptr.2d 139] and *Collier* v. *Superior Court* (1991) 228 Cal.App.3d 1117 [279 Cal.Rptr. 453] the courts upheld causes of action for tortious wrongful discharge where the plaintiffs alleged they were terminated for reporting violations of law to their employers. The court in *Collier* concluded reports of unlawful conduct to the employer are as much in the public interest as reports to a law enforcement agency. The court reasoned if employees are not protected from retaliatory discharge for reporting violations to their employers, a practical interest in self-preservation would deter employees from making any reports at all. Although the employee could not be discharged for reporting to a public agency, the employee "would face an obvious disruption of his or her relationship with the employer, who would be in the unfortunate position of responding to a public agency without first having had the opportunity to deal internally with the suspected problem. These discouraging options would leave the employee with only one truly safe course: do nothing at all." (228 Cal.App.3d at pp. 1123-1124.) Applying a hypothetical suggested in *Foley* (47 Cal.3d at p. 670, fn. 12), the court in *Collier* also reasoned an agreement between the employer and employee that the employee should not report suspected law violations to the employer "would present serious public policy concerns." (228 Cal.App.3d at p. 1125.)

For the reasons stated above, we conclude if MSI discharged Gould in retaliation for his reporting violations of the overtime wage law to MSI management, it violated a fundamental public policy of this state. The demurrer to the second cause of action should have been overruled.

### III. *The Complaint Fails to State a Cause of Action for Breach of an Implied Contract or of an Implied Covenant of Good Faith and Fair Dealing.*

██ Labor Code section 2922 establishes a presumption of at-will employment. It is well settled, however, this presumption may be rebutted by evidence of a contrary intent. (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 677.) ██ In his third cause of action, Gould contends there was an implied-in-fact agreement between him and MSI that he would not be terminated except for good cause and MSI breached this agreement.

██ To state a cause of action under this theory the plaintiff must plead facts which, if proved, may be sufficient for a jury to find an implied-in-fact contract limiting the defendant's right to discharge the plaintiff without cause. (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 682.) There are no hard-and-fast rules for pleading such an agreement. Rather, the courts look to "the totality of the circumstances," including length of employment, the personnel policies or practices of the employer, the employer's conduct reflecting assurances of continued employment, including oral assurances, promotions and salary increases, practices in the industry and handbooks or guidelines. (*Id.*, at p. 682.)

██ Here Gould failed to allege sufficient facts from which a jury could find an implied-in-fact agreement not to discharge him except for good cause. Gould was only employed for three years before he was terminated. He received no promotions or salary increases, although his draw against commissions was increased. The complaint contains no allegations regarding MSI's personnel practices or practices in the industry, nor does it refer to any employee's handbook or guidelines from which a good-cause termination policy could be inferred.

██ Although longevity of service should not be overemphasized (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 681), it is relevant to show a sufficient period for conduct to occur on which a finding of the existence of an implied contract not to terminate except for good cause can be based. (*Luck* v. *Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 1, 14 [267 Cal.Rptr. 618].) In *McLain* v. *Great American Ins. Companies* (1989 208 Cal.App.3d 1476 [256 Cal.Rptr. 863], the court upheld a judgment for plaintiff in a wrongful termination case where the employee had been with the defendant only 18 months. (*Id.* at p. 1481.) The court, however did not rely on this fact in upholding the judgment but relied on the employer's personnel manual and the testimony of other employees about the employer's personnel practices. (*Id.* at pp. 1486-1487.) No such evidence was introduced in the present case. (*Thomka* v. *Financial Corp.* (1993) 15 Cal.App.4th 877, 881-883 [19 Cal.Rptr.2d 382].)

██ The only facts bearing on the existence of an implied-in-fact agreement not to terminate without good cause are that Gould completed his

90-day probationary period and his supervisor told him once employees successfully complete their probationary period they become "members" of the company and that MSI was looking for "long-term" employees.

In *Thomka, supra,* we cited the fact plaintiff completed his probationary period with defendant as one piece of evidence supporting the jury's damage award for breach of an implied-in-fact contract. (15 Cal.App.4th at p. 881.) However, in *Thomka* "[t]here was much evidence of the custom practice and treatment of all account executives as permanent 'non-probationary' employees," as well as evidence an upper management official told plaintiff, shortly before he was terminated, account executives who continued to meet their quota "would be around for a long time" and " 'would have a home with American Savings.' " (*Id.* at pp. 882, 883.) (See also *Kelecheva* v. *Multivision Cable T.V. Corp.* (1993) 18 Cal.App.4th 521, 532-533 [22 Cal.Rptr.2d 453] [company handbook raised triable issue of fact whether employee who completed probationary period could be terminated except for good cause].)

The vague reference by Gould's supervisor to Gould becoming a "member" of the company and the statement MSI was looking for "long term" employees are not the kind of communications from an employer which support assurance of ongoing employment absent good cause for termination. As the court observed in *Foley,* " '[O]blique language will not, standing alone, be sufficient to establish agreement.' " (47 Cal.3d at p. 681, quoting *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 329 [171 Cal.Rptr. 917].)

Because Gould has failed to state a cause of action for breach of an implied-in-fact agreement not to terminate him except for good cause, it necessarily follows he cannot state a cause of action for breach of the implied covenant of good faith and fair dealing on the ground that he was terminated without good cause. The covenant of good faith and fair dealing does not transform a terminable-at-will employment contract into a terminable-only-for-good-cause contract. Whether MSI had a good faith belief in its ground for discharge, or whether it had any ground at all, is irrelevant. (*Davis* v. *Consolidated Freightways* (1994) 29 Cal.App.4th 354, 369 [34 Cal.Rptr.2d 438]; *Slivinski* v. *Watkins-Johnson Co.* (1990) 221 Cal.App.3d 799, 806 [270 Cal.Rptr. 585].)

■ The question remains whether the trial court should have granted Gould leave to amend his complaint to attempt to state a cause of action for breach of an implied-in-fact agreement. Ordinarily it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility the defect can be cured. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d

335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) However, neither we nor the trial court is required to use our imagination as to facts Gould might allege if given the opportunity. Rather the burden is on the plaintiff to show in what manner the complaint can be amended and how such an amendment would cure the defect. (*Ibid.*) Gould was obviously aware of this rule because he offered in the trial court and on appeal to amend his complaint to deal with the alleged written contract submitted by MSI. (See discussion in pt. I., *supra,*) He did not, however, offer to amend the complaint with respect to the cause of action for breach of an implied-in-fact agreement. We presume, therefore, he has alleged all the facts he truthfully can with respect to that claim.

■ We conclude, therefore, the trial court properly sustained the demurrer to the third and fourth causes of action without leave to amend.

IV. *The Statement Gould Made a $100,000 Error in Estimating a Project Supports a Cause of Action for Defamation.*

■ Gould's fifth cause of action alleges defamation (slander) by his supervisor, Stahl, who accused Gould of "poor performance" in his job assignment with MSI, and by MSI's senior project manager, Leister, who informed persons employed by another company Gould "made a $100,000 error in the estimating" of an MSI bid.

Slander is "a false and unprivileged publication, orally uttered, . . . which [inter alia] tends directly to injure [a person] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profits [or] which, by natural consequence, causes actual damage." (Civ. Code, § 46.) "The question whether a statement is defamatory can be reached on demurrer as a matter of law." (*Polygram Records, Inc.* v. *Superior Court* (1985) 170 Cal.App.3d 543, 551 [216 Cal.Rptr. 252].)

In *Jensen* v. *Hewlett-Packard Co.* (1993) 14 Cal.App.4th 958, 965 [18 Cal.Rptr.2d 83], the court addressed the question whether a poor performance evaluation by an employer would support a cause of action for defamation by the employee. The court held "unless an employer's performance evaluation accuses an employee of criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible personal characteristics or behavior . . . it cannot support a cause of action for libel. This is true even when the employer's perceptions about an employee's efforts, attitude, performance, potential or worth to the enterprise are objectively wrong and cannot be supported by reference to concrete, provable facts." Jensen's supervisor

evaluated his work as "adequate in certain respects" but noted Jensen had been "the subject of some third party complaints," "was not carrying his weight," exhibited a "negative attitude in dealing with others," lacked "direction in his project activities" and was "unwilling to take responsibility for the projects he oversaw." (*Id.* at p. 966.) The court held this evaluation would not support a cause of action for defamation because it constituted opinion, not fact, and did not suggest Jensen lacked honesty, integrity, competence, or that he had reprehensible personal characteristics. (*Id.* at pp. 970-971.)

Here, the statement by Gould's supervisor accusing Gould of "poor performance" is clearly a statement of opinion. It does not suggest any lack of honesty, integrity or competency on Gould's part nor does it impute any reprehensible personal characteristic. Therefore, under *Jensen*, we conclude this statement is not defamatory.[4]

We reach a different conclusion as to Leister's accusation Gould made a $100,000 mistake in estimating an MSI bid. This statement would tend to injure Gould by imputing to him incompetence in his trade. (Civ. Code, § 46; *Jensen* v. *Hewlett-Packard Co.*, *supra*, 14 Cal.App.4th at p. 965.) Furthermore, it is a statement of fact susceptible to proof or refutation by reference to concrete, provable data. (Cf. *Gregory* v. *McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600 [131 Cal.Rptr. 641, 552 P.2d 425]; *Jensen*, *supra*, 14 Cal.App.4th at p. 971.) The present case is distinguishable from *Soules* v. *Cadam, Inc.*, *supra*, in which we held damages for defamation are not recoverable in a wrongful discharge case where the defamation claim is founded on the same conduct alleged to constitute breach of the covenant of good faith and fair dealing. (2 Cal.App.4th at pp. 403-404.) Here, Gould alleges Leister's defamation as an independent tort. Therefore, the court erred in sustaining the demurrer to the fifth cause of action insofar as it alleges defamation based on the statement accusing Gould of making a $100,000 mistake in estimating an MSI bid.

### V. *Gould's Complaint States a Cause of Action for Unpaid Compensation.*

 In his sixth cause of action, Gould alleges he and MSI had an agreement whereby Gould was to receive a 3 percent commission on the gross sales of any and all MSI products. He alleges he obtained a contract for MSI to install a sound system in the San Jose Sports Arena and thereby

---

[4]Because we find the statement is not defamatory, we do not reach the question whether Gould adequately pled compelled self-publication of the statement. (Cf. *Davis* v. *Consolidated Freightways*, *supra*, 29 Cal.App.4th at p. 373.)

earned a commission of $51,000 which MSI has refused to pay. He further alleges MSI owes him $979 for other work he performed under an oral agreement with MSI plus accrued vacation pay in the amount of $1,800.

MSI demurred to this cause of action on the ground Gould failed to allege facts which would support a *criminal* charge of failure to pay wages due. (Lab. Code, § 216.)[5] No such facts are necessary to state a cause of action for what, in essence, is a breach of contract.

The trial court erred in sustaining the demurrer to the sixth cause of action.

### VI. *Gould's Complaint Does Not State a Cause of Action for Prima Facie Tort.*

We have held Gould has stated causes of action for the only tort remedies he possesses—damages for discharge in violation of public policy and for defamation. We have held he has not stated a cause of action for breach of implied-in-fact contract or breach of the implied covenant of good faith and fair dealing. But even if he had adequately pled such causes of action, he cannot do an end-run around *Foley* by attempting to incorporate those claims into an overall "prima facie tort." (*Soules* v. *Cadam, Inc., supra,* 2 Cal.App.4th at p. 404.) We conclude, therefore, the trial court properly sustained the demurrer to Gould's seventh cause of action without leave to amend.

### DISPOSITION

The judgment of dismissal is reversed. The matter is remanded to the trial court with directions to overrule the demurrers to the first, second, fifth and sixth causes of action and to sustain the demurrers to the third, fourth and seventh causes of action without leave to amend. Each party to bear its own costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

Respondents' petition for review by the Supreme Court was denied May 11, 1995. Kennard, J., was of the opinion that the petition should be granted.

---

[5]Under Labor Code section 216, an employer is guilty of a misdemeanor if, having the ability to pay, it willfully refuses to pay wages due after demand for payment has been made, or if the employer falsely denies wages are due or falsely disputes the amount due with intent to secure a discount on the indebtedness or to harass, oppress, hinder, delay or defraud the employee.