Filed 4/2/26  Lora v. Aztec T.D. Service Co. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CANDELARIO LORA et al., | B331615 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 22STCV09458) |
| AZTEC T.D. SERVICE CO. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mark C. Kim, Judge.  Reversed and remanded with directions.

Gomez Law and Susan M. Murphy for Plaintiffs and Appellants.

Wood Smith Henning & Berman, Stephen M. Caine, Frances M. O'Meara, and Holly M. Teel for Defendants and Respondents West Shores Realty, Amir Al-Khayat, John Denault III, and Kathleen Healy.

_____

**INTRODUCTION**

Plaintiffs and appellants Candelario Lora and Maria Del Sagrario Lora (collectively, the Loras) appeal from the judgment of dismissal entered after the trial court sustained without leave to amend the demurrer filed by defendants and respondents West Shores Realty, Amir Al-Khayat, John Denault III, and Kathleen Healy (collectively, Respondents) to the Loras' operative second amended complaint.  In sustaining the demurrer, the trial court took judicial notice of a tolling agreement entered between the parties during the pendency of a prior lawsuit, and concluded the Loras' complaint was barred as a matter of law by their failure to comply with the terms of the agreement.  We conclude the trial court erred in taking judicial notice of the tolling agreement and in sustaining the demurrer because the proper interpretation and enforceability of the tolling agreement were reasonably subject to dispute.  We accordingly reverse the judgment of dismissal and remand for the trial court to overrule the demurrer.

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.    The 2019 lawsuit**

On October 09, 2019, the Loras filed a civil action against Respondents and numerous other entities and individuals (the "2019 Lawsuit").  The gravamen of the claims against Respondents was that they acted as the Loras' real estate agents while participating in a fraudulent scheme to purchase and "flip" a residential property (the "Shadow Lane Property") in or about June 2018.  Without the Loras' knowledge and consent, the Shadow Lane Property allegedly was purchased with proceeds from a loan secured by a deed of trust on a separate property owned by the Loras (the "69th Way Property"), which later went into foreclosure after the Loras defaulted on the loan.

2

## 2. The tolling agreement

In August 2021, during the pendency of the 2019 Lawsuit, the Loras and Respondents entered into a "Tolling Agreement." In that agreement, the Loras agreed to dismiss, without prejudice, Respondents from the 2019 Lawsuit so that the parties can explore the possibility of settlement. At that time, the Loras had two pending causes of action against Respondents for breach of fiduciary duty and elder abuse. As relevant here, Paragraphs 2 through 6 of the Tolling Agreement provided as follows:

"2. The LORA PLAINTIFFS will dismiss the WEST SHORES REALTY DEFENDANTS without prejudice from the Lawsuit within 24 hours of the receipt by James Judge, Esq., counsel for the LORA PLAINTIFFS, of this Tolling Agreement signed by all WEST SHORES REALTY DEFENDANTS, subject to re-filing (hereinafter the 'Refiled Complaint') against the WEST SHORES REALTY DEFENDANTS pursuant to Paragraph 5, below, in the event the parties hereto are unable to reach and consummate a settlement or other resolution of the claims contained in the Lawsuit in accordance with this Tolling Agreement.

"3. Provided the Refiled Complaint is filed before the end of the Termination Date of this Tolling Agreement as hereinafter defined in Paragraph 4, below, or within thirty (30) days of the notice of termination or cancellation of the Tolling Agreement as provided for in Paragraph 19, below, the Refiled Complaint against the WEST SHORES REALTY DEFENDANTS shall be deemed to have been filed on the same date as the Lawsuit, which was October 9, 2019.

"4. The running time under any and all applicable statute of limitations, claims of estoppel, laches, laws, rules, regulations,

3

or principles of equity of similar effect (collectively referred to as 'Time-Bar Defenses') that relate or pertain to the LORA PLAINTIFFS' Lawsuit against the WEST SHORES REALTY DEFENDANTS, and any defenses of the WEST SHORES REALTY DEFENDANTS to the LORA PLAINTIFFS' Lawsuit, are hereby suspended and tolled beginning on the date of execution of this Tolling Agreement by the LORA PLAINTIFFS and the WEST SHORES REALTY DEFENDANTS, (the 'Effective Date') and ending six (6) months from the date of the last signature on this Tolling Agreement (the 'Termination Date'). The period from and including the Effective Date until the end of the Termination Date shall not be considered in any determination of the timeliness of filing the Refiled Complaint.

"5. If the LORA PLAINTIFFS determine to file the Refiled Complaint as defined at Paragraph 2, above, against the WEST SHORES REALTY DEFENDANTS, or any of them, the Refiled Complaint shall not include a claim for punitive damages or a cause of action for Elder Abuse, and shall contain only a cause of action for Breach of Fiduciary Duty. After their filing of the Refiled Complaint, nothing in this Tolling Agreement shall bar the LORA PLAINTIFFS from filing a motion for leave to amend the Refiled Complaint as to the WEST SHORES REALTY DEFENDANTS. The WEST SHORES DEFENDANTS shall have the right to oppose any such motion for leave to amend the Refiled Complaint, but agree not to utilize the time period encompassed by this Tolling Agreement as a basis for opposing any such motion as to any claims against the WEST SHORES REALTY DEFENDANTS. The WEST SHORES REALTY DEFENDANTS reserve all rights to assert any defenses existing prior to the Effective Date of the Tolling Agreement.

4

"6. Nothing in this Tolling Agreement shall operate to revive any claim, cause of action, action, lawsuit, arbitration, or other proceeding that the LORA PLAINTIFFS could have brought or asserted against the WEST SHORES REALTY DEFENDANTS, or any of them, arising out of or related to the Lawsuit or that could have been asserted in the Lawsuit, arbitration, or any other legal proceeding, which are already barred, in whole or in part, by any Time-Bar Defense as of the Effective Date of this Tolling Agreement."

The Tolling Agreement was signed by the Loras on August 5, 2021 and by Denault and Healy on August 4, 2021. It also was signed by Al-Khayat, individually and on behalf of West Shores Reality, but the date of that signing was not reflected in the agreement.

In early 2022, the Loras and Respondents entered into an "Extension of Tolling Agreement" (the "Extension"). Under the Extension, the parties agreed that "the term ('Termination Date') as defined at Paragraph 4 of the . . . Tolling Agreement shall be extended to 11:59 p.m. on March 6, 2022," and that "[a]ll other terms . . . shall remain in full force and effect."

### 3. The 2022 lawsuit

On March 16, 2022, the Loras filed the current action against Respondents and other entities and individuals for claims arising out of the Shadow Lane Property transaction (the "2022 Lawsuit"). Like the 2019 Lawsuit, the gravamen of the 2022 Lawsuit was that Respondents and the other named defendants engaged in a fraudulent scheme to purchase the Shadow Lane Property through a loan secured by a deed of trust on the Loras' 69th Way Property, and that they did so without the Loras' knowledge and consent.

5

On June 7, 2022, before any party responded to the March 16, 2022 complaint, the Loras filed a first amended complaint. Then, on January 5, 2023, the Loras filed a second amended complaint pursuant to a stipulation between the parties in which Respondents agreed to permit the Loras to file a second amended complaint but reserved the right to attack that pleading on any available grounds.

In the operative second amended complaint, the Loras asserted causes of action for breach of fiduciary duty against each of Respondents, and causes of action for breach of written contract and breach of the implied covenant of good faith and fair dealing against West Shores Realty only. As alleged in the complaint, Candelario Lora and the seller of the Shadow Lane Property signed a document cancelling the sale of the property on or about June 8, 2018. Despite the cancellation, on or about June 11, 2018, the Loras were pressured into signing various documents that were written in English even though their primary language was Spanish, and they were not provided with copies of the documents that they signed. Unbeknownst to the Loras, those documents included a promissory note for $545,000 secured by a deed of trust on the Loras' 69th Way Property. Respondents, along with other named defendants, then fraudulently completed the purchase of the Shadow Lane Property, using documents with forged signatures and funding the purchase with proceeds from the 69th Way Property loan. After the transaction was completed, the Loras did not receive any invoices or demands for payment regarding the 69th Way Property loan, and they "did not fully discover and could not have discovered through the exercise of reasonable diligence, the fraud that had been perpetrated until at least June of 2019," when a

6

notice of default and foreclosure on the 69th Way Property was recorded.

In their cause of action for breach of fiduciary duty, the Loras alleged that Respondents owed them a fiduciary duty as their real estate agents, and that Respondents breached that duty "by misrepresenting facts, lying, suborning perjury, forging documents, suppressing the truth, placing their own interests above that of [the Loras], and other, similar breaches." The Loras further alleged that they "did not discover the breach . . . until at least June of 2019, and could not have discovered it by any exercise of due diligence before that time." In their cause of action for breach of written contract against West Shores Realty, the Loras alleged that, within the last four years, they entered into a written contract with West Shores Realty for a real estate transaction involving the Shadow Lane Property, and that West Shores Realty breached the contract by "failing, refusing, and neglecting to cancel the sale of the Shadow Lane [P]roperty and by other acts alleged herein." In their cause of action for breach of the implied covenant of good faith and fair dealing against West Shores Realty, the Loras alleged that a covenant of good faith and fair dealing is implied in every contract entered in California, and that West Shores Realty breached the covenant "by doing the acts herein alleged."

**4.    Respondents' demurrer and motion to strike**

On March 30, 2023, Respondents filed a demurrer and motion to strike the Loras' second amended complaint. Respondents argued that the entire action was time-barred because the Tolling Agreement and Extension required the Loras to refile their complaint by March 6, 2022, and the Loras did not do so until March 16, 2022. Respondents further asserted that

7

the causes of action for breach of written contract and breach of the implied covenant of good faith and fair dealing were barred because the Tolling Agreement required the Loras to limit their refiled complaint to a single cause of action for breach of fiduciary duty. In support of their demurrer and motion to strike, Respondents also filed a request for judicial notice of (1) the original complaint in the 2019 Lawsuit; (2) the requests for dismissal of Respondents from the 2019 Lawsuit; and (3) the Tolling Agreement and Extension.

The Loras opposed Respondents' demurrer, motion to strike, and request for judicial notice. The Loras contended that the Tolling Agreement and Extension were not judicially noticeable for purposes of a demurrer and motion to strike because the proper interpretation of the agreement was in dispute. The Loras further argued that, even if subject to judicial notice, the Tolling Agreement and Extension did not bar any of their claims because the complaint was timely refiled, and the terms of the agreement did not prohibit amended versions of the complaint from adding claims beyond breach of a fiduciary duty. In support of their timeliness argument, the Loras asserted that their counsel electronically filed the complaint on March 3, 2022, but that filing was rejected by the court clerk, and that after several additional attempts, their counsel successfully refiled the complaint on March 16, 2022. In addition, the Loras contended that the Tolling Agreement and Extension did not preclude them from refiling the complaint after March 6, 2022, but rather provided that if filed after that date, then the refiled complaint would not relate back to the original complaint in the 2019 Lawsuit. The Loras also sought leave to amend the complaint in the event that the court sustained the demurrer.

8

**5.    The ruling on the demurrer and motion to strike**

On June 1, 2023, the trial court sustained the demurrer to the Loras' second amended complaint without leave to amend on the ground that the entire action was barred by the terms of the Tolling Agreement and Extension.  In sustaining the demurrer, the court also granted Respondents' request for judicial notice.  The court concluded that judicial notice of the parties' Tolling Agreement and Extension was proper because the terms of the contract were not ambiguous, and thus, "interpretation of the contract is not necessary."  The court then concluded that each cause of action in the second amended complaint was barred because the Loras "failed to comply with their obligations under the parties' [T]olling [A]greement."  In particular, the court found that the terms of the Tolling Agreement and Extension required that the complaint be filed by March 6, 2022, and that the Loras did not file their complaint until March 16, 2022.  The court reasoned that the term " 'filed' " as used in the Tolling Agreement "means filed," not "attempted to file," and as a result, the Loras' unsuccessful attempts to file the complaint before March 6, 2022 did not satisfy the Tolling Agreement.  Based on its conclusion that the complaint was not timely filed, the court determined that any additional issues raised by the demurrer and motion to strike were moot.

On June 13, 2023, the trial court dismissed the Loras' second amended complaint against Respondents with prejudice and entered a judgment in favor of Respondents.

**6.    The Loras' motion for reconsideration**

On June 12, 2023, prior to the entry of judgment, the Loras filed a motion for reconsideration of the order sustaining the demurrer.  In their motion, the Loras asserted that they had

additional facts to support granting leave to further amend the complaint, including that they signed the Tolling Agreement under pressure from their attorney at the time, and that they did not knowingly and voluntarily waive any rights by signing the agreement. The Loras also argued that each cause of action alleged against Respondents in their complaint was timely under the applicable statute of limitations and the doctrine of equitable tolling. The motion was supported by a declaration from Candelario Lora in which he asserted that the Loras' former attorney in the case did not explain the terms of the Tolling Agreement or provide the Loras with a copy in Spanish, but rather threatened to quit if they did not immediately sign the agreement.

On July 27, 2023, the trial court issued a tentative ruling denying the Loras' motion for reconsideration. However, on that same date, the court vacated the hearing on the reconsideration motion and stayed the case in its entirety because the Loras had filed a notice of removal of the action to federal bankruptcy court.

On August 29, 2023, following the remand of the action to state court, the Loras filed an appeal from the judgment of dismissal.

## DISCUSSION

On appeal, the Loras challenge the trial court's order sustaining the demurrer to their second amended complaint without leave to amend. Among other arguments, the Loras assert that the trial court erred in taking judicial notice of the Tolling Agreement in ruling on the demurrer because the proper interpretation of the agreement, including whether it barred any complaint filed after March 6, 2022, was subject to dispute. The Loras also argue that they should have been granted leave to

10

amend the complaint to add factual allegations regarding the unenforceability of the Tolling Agreement, including that they signed the agreement under duress and did not knowingly and voluntarily release any claims. Respondents contend that the trial court properly took judicial notice of the existence of the Tolling Agreement and its legal effect because there was no dispute about the authenticity of the document. Respondents further assert that the trial court did not err in sustaining the demurrer without leave to amend because the complaint was barred by the plain language of the Tolling Agreement.

We conclude that the trial court erred in taking judicial notice of the Tolling Agreement and Extension in ruling on the demurrer because the proper interpretation and enforceability of the agreement were reasonably subject to dispute. Because the Tolling Agreement and Extension were not properly subject to judicial notice at the demurrer stage, the trial court erred in sustaining Respondents' demurrer on the ground that the complaint was barred by the Loras' failure to comply with the terms of that agreement.

## 1. Standard of review

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.) " 'We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " (*County of Santa Clara v. Superior Court* (2023)

11

14 Cal.5th 1034, 1041.)  "We also consider matters that are subject to judicial notice."  (*Rosenberg-Wohl v. State Farm Fire & Casualty Co.* (2024) 16 Cal.5th 520, 523.)  "If the demurrer was sustained without leave to amend, we consider whether there is a 'reasonable possibility' that the defect in the complaint could be cured by amendment."  (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1050.)

## 2. The trial court erred in taking judicial notice of the Tolling Agreement and sustaining the demurrer

"Because a demurrer challenges defects *on the face of the complaint*, it can refer to matters outside the pleading only if those matters are subject to judicial notice."  (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 834.)  Under Evidence Code section 452, a trial court may take judicial notice of "[f]acts . . . that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  (*Id.*, subd. (h).)  Generally, "[i]n ruling on a demurrer, a court may consider facts of which it has taken judicial notice. [Citation.]  This includes the existence of a document.  When judicial notice is taken of a document, however, the truthfulness and proper interpretation of the document are disputable."  (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 456, fn. 9.)  Accordingly, at the demurrer stage, "[a]lthough the existence of a document may be judicially noticeable, the truth of statements contained in the document and its proper interpretation are not subject to judicial notice if those matters are reasonably disputable."  (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113 (*Fremont*); accord, *Richtek USA, Inc. v. uPI Semiconductor Corp.* (2015)

242 Cal.App.4th 651, 660; see *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1103–1104.)

Where the document at issue is a contract between the parties, "[t]he proper interpretation of a contract is disputable if the contract is susceptible of more than one reasonable interpretation, that is, if the contract is ambiguous. An ambiguity may appear on the face of a contract, or extrinsic evidence may reveal a latent ambiguity." (*Fremont*, *supra*, 148 Cal.App.4th at p. 114.) "For a court to take judicial notice of the meaning of a document submitted by a demurring party based on the document alone, without allowing the parties an opportunity to present extrinsic evidence of the meaning of the document, would be improper. A court ruling on a demurrer therefore cannot take judicial notice of the proper interpretation of a document submitted in support of the demurrer." (*Id.* at pp. 114–115.) Furthermore, "[t]his rule applies not only with respect to the interpretation of a contract, but also with respect to its enforceability. A court ruling on a demurrer cannot take judicial notice that a contract submitted in support of the demurrer is binding and enforceable if the plaintiff claims the contract is unenforceable due to fraud or duress." (*Id.* at p. 115.)

In *Fremont*, for instance, the plaintiff filed suit against the defendants for an alleged misappropriation of the net operating losses of the plaintiff's predecessor in interest. (*Fremont*, *supra*, 148 Cal.App.4th 97 at p. 103.) In sustaining the demurrer to the plaintiff's complaint without leave to amend, the trial court granted the defendants' request for judicial notice of a letter agreement between the parties that purportedly released the defendants from any liability for their use of the net operating losses. (*Id.* at p. 113.) In reversing the judgment of dismissal,

13

the Court of Appeal held that the trial court erred by taking judicial notice of the agreement in ruling on the demurrer. (*Id*. at pp. 115–116.) As the court explained: "[The plaintiff] does not allege in the complaint either that the . . . letter agreement released the defendants from liability [to the plaintiff] for their use of [the predecessor's] net operating losses or that the letter agreement is an enforceable contract. Because the parties disputed and continue to dispute the proper interpretation of the letter agreement, we conclude that the trial court erred by interpreting the document in ruling on the demurrer." (*Id*. at p. 115.) The Court of Appeal further concluded that, because the plaintiff disputed the enforceability of the agreement based on the defendants' alleged fraudulent concealment of certain material information, "[t]he trial court erred by determining in ruling on the demurrer that the letter agreement is binding and enforceable. The [trial] court could not properly foreclose the introduction of extrinsic evidence bearing on the proper interpretation of the letter agreement and its enforceability by deciding those questions based on only the pleadings and matters judicially noticeable." (*Id*. at p. 116.)

Similarly, in *Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137 (*Gould*), the Court of Appeal held that the trial court could not properly take judicial notice of a written agreement between the parties in ruling on a demurrer where the existence and enforceability of that agreement were in dispute. (*Id*. at pp. 1144–1146.) The plaintiff in *Gould* sued his former employer based on allegations that he was employed under an oral contract governed by California law. (*Id*. at p. 1144.) In its demurrer, the employer asked the trial court to take judicial notice of a written at-will contract between the parties

14

governed by Maryland law.  (*Ibid.*)  In concluding that the written agreement was not subject to judicial notice at the demurrer stage, the Court of Appeal held that "the existence of a contract between private parties cannot be established by judicial notice under Evidence Code section 452, subdivision (h)." (*Gould*, at p. 1145.)  As the court observed, "we have a dispute between two parties one of whom claims he was employed under an oral contract and one of whom claims the employment was pursuant to a written contract.  Clearly, this dispute cannot be resolved by resorting to 'facts and propositions that are not reasonably subject to dispute.' " (*Ibid.*)  Moreover, "[w]hile most matters subject to judicial notice can be established by reference to a statute, court file, treatise or other document, a court cannot simply look at a piece of paper and conclude as a matter of law it is a contract between the parties.  Here, . . . [the plaintiff] claims the document [the employer] contends is a contract is merely an offer by him to enter into a contract . . . which [the employer] never accepted.  He further contends he is not bound by the terms of the document because he signed it under duress.  These contentions raise questions of fact which cannot be resolved at the pleading stage of the case." (*Id*. at p. 1146.)

In this case, the trial court granted Respondents' request for judicial notice of the Tolling Agreement and Extension in sustaining the demurrer without leave to amend.  In its ruling, the court found that "[b]ecause interpretation of the contract is not necessary, judicial notice is proper."  The court then found that the Loras "failed to comply with their obligations under the parties' [T]olling [A]greement" and Extension because the terms of the agreement required them to file their complaint by March 6, 2022, but the Loras did not successfully file their

15

complaint until March 16, 2022. Therefore, despite asserting that "interpretation of the contract is not necessary," the trial court went on to interpret the language of the Tolling Agreement to mean that any complaint filed by the Loras after March 6, 2022 was untimely. However, because the parties disputed, and continue to dispute, the proper interpretation of the Tolling Agreement and Extension, the trial court erred in interpreting those documents in sustaining the demurrer.

Although the trial court construed the Tolling Agreement and Extension as providing a deadline of March 6, 2022 for the filing of the complaint, neither document expressly stated that a complaint filed after a certain period or date would be time-barred. Paragraph 3 of the Tolling Agreement provided that if the Loras filed the complaint "before the end of the Termination Date," then the complaint "shall be deemed to have been filed on the same date as the [2019] Lawsuit, which was October 9, 2019." Paragraph 4 of the Tolling Agreement defined the "Termination Date" as "six (6) months from the date of the last signature" on the agreement, and the Extension later entered into by the parties extended the "Termination Date" to "March 6, 2022." Paragraph 4 also provided that "[t]he running time under any and all applicable statute of limitations . . . that relate or pertain to the [2019] Lawsuit . . . are hereby suspended and tolled" between the Effective Date (which was August 5, 2021) and the Termination Date (which was March 6, 2022 under the Extension), and that this period "shall not be considered in any determination of the timeliness of filing the Refiled Complaint."

Yet neither the Tolling Agreement nor the Extension specifically addressed what it would mean if the Loras filed their complaint after March 6, 2022, but before the applicable statute

16

of limitations on their claims had run. Under Respondents' interpretation of the Tolling Agreement, which the trial court adopted, any claim alleged in the complaint would be time-barred regardless of whether the statute of limitations on that claim had run because the complaint was filed after the Termination Date. Under the Loras' interpretation, the complaint would not relate back to the October 9, 2019 filing of the 2019 Lawsuit, and instead, the applicable statute of limitations, plus the seven-month tolling period, would determine whether each claim alleged in the complaint was timely. The parties also disputed whether the Loras complied with Paragraph 3 of the Tolling Agreement when they electronically submitted the complaint for filing with the court prior to March 6, 2022, even though the court clerk rejected the filing due to a formatting error. In ruling on the demurrer, the trial court agreed with Respondents that the term "file" as used in the Tolling Agreement meant that the Loras had to successfully file the complaint by March 6, 2022, and that their prior unsuccessful attempts at filing were not sufficient to satisfy their obligations under the agreement. However, " '[o]n a demurrer a court's function is limited to testing the legal sufficiency of the complaint. [Citation.] "A demurrer is simply not the appropriate procedure for determining the truth of disputed facts," ' " including disputes over the meaning of a contract. (*Fremont*, *supra*, 148 Cal.App.4th at pp. 113–114.) Because the proper interpretation of the Tolling Agreement and Extension is a matter of dispute between the parties, it was not the proper subject of judicial notice on demurrer.

In arguing that the trial court erred in sustaining the demurrer without leave to amend, the Loras also dispute the enforceability of the Tolling Agreement. In particular, in both

17

their motion for reconsideration before the trial court and their briefing on appeal, the Loras assert that they signed the Tolling Agreement under duress, and that they did not knowingly and voluntarily release any of their claims because their limited proficiency in English precluded them from understanding the terms of the agreement. Respondents argue that none of these alleged facts are sufficient to overcome a demurrer because the Tolling Agreement included a clause stating that each party to the agreement represented that they read and understood the agreement, that they obtained the advice of counsel in agreeing to enter into it, and that they did so voluntarily. However, as the appellate courts in *Fremont* and *Gould* recognized, a court ruling on a demurrer cannot take judicial notice that a contract between the parties is binding and enforceable if the plaintiff disputes the enforceability of the contract based on alleged fraud or duress. (*Fremont, supra,* 148 Cal.App.4th at p. 115; *Gould, supra,* 31 Cal.App.4th at p. 1146.) Here, the Loras contend the Tolling Agreement is unenforceable as a release of any claims against Respondents because they did not knowingly and voluntarily enter into the agreement, but rather signed it under duress. Like the parties' dispute over the proper interpretation of the Tolling Agreement, the Loras' claim regarding the enforceability of the agreement raises a factual issue that cannot be resolved on demurrer.

In conclusion, the trial court erred in taking judicial notice of the proper interpretation and enforceability of the parties' Tolling Agreement and Extension in ruling on the demurrer. Because the meaning and enforceability of these documents were reasonably subject to dispute, the trial court could not consider their contents in deciding whether the Loras' complaint was

18

timely filed and whether it properly included causes of action other than breach of fiduciary duty.  The trial court accordingly erred in sustaining Respondents' demurrer on the ground that the Loras' complaint was barred as a matter of law under the terms of the Tolling Agreement and Extension.

## DISPOSITION

The judgment of dismissal is reversed, and the matter is remanded to the trial court with directions to vacate the order sustaining Respondents' demurrer to the second amended complaint without leave to amend and to enter a new order overruling the demurrer.  The Loras shall recover their costs on appeal.


VIRAMONTES, J.


WE CONCUR:



STRATTON, P. J.



WILEY, J.

19