Hyman A. LIT

v.

**INFINITY BROADCASTING CORPORATION OF PENNSYLVANIA, et al.**

No. 04–3413.

United States District Court, E.D. Pennsylvania.

June 8, 2005.

Alan B. Epstein, Nancy Beth Abrams, Spector Gadon & Rosen, PC, Philadelphia, PA, for Hyman A. Lit.

Judith E. Harris, Bacardi L. Jackson, Morgan Lewis & Bockius LLP, Philadelphia, PA, for Infinity Broadcasting Corporation of Pennsylvania, et al.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff Hyman A. Lit ("Lit") has brought an action against his employer Infinity Broadcasting Corporation of Pennsylvania, a division of Viacom, Inc., as well as its owned and operated radio station, WOGL–FM radio station (the "station"), and its general manager Sil Scaglione ("Scaglione"). Plaintiff claims age and disability discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951, et seq., against the corporate defendants. His claim against Scaglione is solely under the PHRA. Before the court is the motion of defendants for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on all claims except for the claim of age discrimination based on disparate impact.[1]

---

1. On May 5, 2005, we granted plaintiff's motion to amend his complaint to include an age discrimination claim based on disparate impact in light of the recent Supreme Court decision in *Smith v. City of Jackson, Mississippi,* 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005). In our scheduling order dated May 6, 2006, we extended discovery on this issue only and ordered that any supplemental summary judgment motion on the claim of age discrimination based on a disparate impact theory must be filed with the court by July 11, 2005. Accordingly, this Memorandum will not address plaintiff's age discrimi-

## I.

Under Rule 56(c), we may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 254, 106 S.Ct. 2505. We review all evidence and make all reasonable inferences from the evidence in the light most favorable to the non-movant. *See Wicker v. Consol. Rail Corp.*, 142 F.3d 690, 696 (3d Cir.1998). The non-moving party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

## II.

The following facts are either undisputed or viewed in the light most favorable to plaintiff. Lit began working in the radio broadcasting industry in 1954. During his tenure in this business, he has worked as a disc jockey, announcer, and host for nationally syndicated television programs. In 1987, he was diagnosed with a mild form of Parkinson's Disease, a degenerative neurological disease which causes his left hand to shake a little bit and causes him to slow down when walking. Lit Dep. at 26–27, 29–30, 47–48. In October, 1988, at the age of fifty-four, plaintiff joined the on-air staff of radio station WOGL–FM, first as a freelance announcer/independent contractor and later as an employee of the station. He was hired by Steve Carver, the station's general manager at the time. During plaintiff's tenure at WOGL–FM, he experienced several changes in his employment status, work schedule and salary. About ten years into his tenure at WOGL, Carver reduced his schedule in an attempt to derive more revenue for the station. *See* Lit Dep. at 18. Carver left the station in early 2000 and was replaced by a series of general managers. *See* DeFruscio Dep. at 24. In or around September, 2000, when Chris Claus was the general manager, plaintiff's on-air schedule was reduced and his annual salary was decreased from $116,000 to $50,000. *See* Human Resource/Payroll Information dated Sept. 1, 2000, attached as Ex. D to Defs.' Mot. for Summ. J.

In early 2001, more than twelve years after plaintiff began working at the station, Sil Scaglione became the new general manager. Sometime during 2001, plaintiff was told that his on-air schedule would be limited to one show per week on Sunday evenings and that his salary would be cut to $900 per month. *See* Lit Dep. at 39–40. Thereafter, plaintiff asked defendant Scaglione what benefits he would receive if he were to retire.[2]

On January 31, 2002, plaintiff's status as an employee of WOGL–FM ceased, but he was retained as an independent contractor for the station working two hours a week on Sunday evenings. The record is not clear about the circumstances surrounding plaintiff's transition from an employee to an independent contractor. At that time,

---

nation claim as it relates to the disparate impact theory.

**2.** It appears from the record that plaintiff inquired about his eligibility for retirement benefits in or around April, 2001. *See* April 2, 2001 email from Carol Germer to Linda Solitto requesting pension information for plaintiff, attached as Ex. C at D00257 to Defs.' Mot. for Summ. J.

he was being paid approximately $900 per month. His employee benefits expired on February 8, 2002. Thereafter, plaintiff began receiving and continues to receive retirement benefits provided by WOGL to eligible retirees.

On July 22, 2002, plaintiff filed an administrative charge with the Pennsylvania Human Relations Commission ("PHRC"), in which he alleged that the station had discriminated against him based on his age and Parkinson's disease when it reduced his salary and work schedule and when it relegated him to the status of an independent contractor following the cessation of his employment in January, 2002. Plaintiff filed the complaint in this action on July 20, 2004.

### III.

◼ Defendants first move for summary judgment on the ground that plaintiff has failed to exhaust administrative remedies as required under both federal and state anti-discrimination laws. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 926 (3d Cir.1997); *Doyle v. Barnhart*, CIV.A. No. 03–0264, 2004 WL 1237359, at *2 (E.D.Pa. May 17, 2004). The PHRA requires that any administrative complaint be filed with the PHRC within 180 days of the alleged act of discrimination. *See* 43 Pa. Stat. Ann. §§ 959(h), 962. Under the ADA and ADEA, the employee has 300 days to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir.2000); *Peter v. Lincoln Tech. Inst.*, 255 F.Supp.2d

417, 426 (E.D.Pa.2002) (citing 42 U.S.C. § 2000e–5(e)(1)(2002)).[3]

◼ Defendants contend that the first three alleged discriminatory actions in plaintiff's complaint (his first and second pay reductions and the reduction of his on-air time) occurred more than 180 days before plaintiff filed his PHRC complaint and are now therefore time-barred.[4] Plaintiff filed his PHRC complaint on July 22, 2002, more than 180 days after the first salary cut and reduction in on-air time. He asserts that the allegations in his complaint regarding events prior to the 180 day filing deadline are not separate claims but evidence of defendants' pattern and practice of discrimination against plaintiff. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Any pay cuts and/or reductions in plaintiff's on-air schedule that occurred outside the filing deadline may be relevant in determining if an impermissible factor was a motivating or determinative factor in an adverse employment decision within the 180 day period. *See Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir.1998).

The gravamen of plaintiff's complaint is that defendants unlawfully terminated his employment on the basis of plaintiff's age and disability on January 31, 2002. We find that plaintiff's charge of discrimination filed with the PHRC 172 days thereafter timely raised this alleged violation of the ADEA, ADA and PHRA. Accordingly, we will deny the motion of defendants for summary judgment on the ground that

---

**3.** A charge of discrimination filed with the PHRC is deemed duly filed with the EEOC. *See Taylor v. Rodale, Inc.*, CIV.A. No. 04–799, 2004 WL 3199363, at *3 (E.D.Pa. Oct 22, 2004).

**4.** The documents submitted in support of defendants' summary judgment motion reveal that plaintiff's pay reductions occurred in September, 2000, and again in February, 2002. *See* Human Resources/Payroll Information, attached as Ex. C at D00227 of Def.'s Mot. for Summ. J.; Hy Lit Benefit Base, attached as Ex. C at D00309 of Defs.' Mot. for Summ. J.

plaintiff has failed to exhaust his administrative remedies.

## IV.

We turn to plaintiff's claims of age discrimination. Under the ADEA, it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)).

■ Such cases must be examined under a burden-shifting analysis. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Initially, the plaintiff must make out a prima facie case of discrimination. *See Reeves,* 530 U.S. at 142, 120 S.Ct. 2097. Plaintiff must show that: (1) at the time of the adverse employment action, he was a member of the class protected by the ADEA, that is, that he was at least 40 years of age; (2) he was otherwise qualified for the position in which he was employed; (3) he suffered an adverse employment decision; and (4) in the case of a demotion or discharge, he was replaced by a younger employee. *Simpson,* 142 F.3d at 644 n. 5. If plaintiff makes out a prima facie case, the burden of going forward shifts to defendant, which must then produce evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Id.* "This burden is one of production, not persuasion; 'it can involve no credibility assessment.'"

*Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Upon defendant's production, plaintiff must prove by a preponderance of the evidence that the nondiscriminatory explanation offered by the employer was not the employer's actual reason but a pretext for discrimination. *St. Mary's Honor Ctr.,* 509 U.S. at 507–08, 113 S.Ct. 2742.

As stated, we first must determine whether plaintiff has carried his burden of establishing a prima facie case of age discrimination while viewing the facts in the light most favorable to the plaintiff. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *Fakete,* 308 F.3d at 337. Defendants do not dispute that plaintiff is 71 years old or that he was qualified for the position. Defendants further concede that plaintiff's salary and on-air schedule were reduced when he ceased to be an employee on January 31, 2002 and became an independent contractor. It is also undisputed that two broadcasters who are 18 and 20 years younger than plaintiff worked as afternoon hosts sometime after plaintiff moved from the weekday to weekend shift.

■ Defendants argue that plaintiff has not established a prima facie case because his retirement and change in status to independent contractor in January, 2002 did not constitute an adverse action since this change was voluntary. Defendants rely on *Connors v. Chrysler Financial Corp.,* 160 F.3d 971 (3d Cir.1998). In that case, our Court of Appeals found that an executive of a corporation that was about to be acquired did not demonstrate that he was constructively discharged on account of age. The court explained that he voluntarily retired because it was more economically advantageous than continuing to work for the new corporation. *Id.* at 974–75. The circumstances in the instant ac-

tion appear to be quite different. Here, before plaintiff decided on retirement, he was informed that his salary as an employee would be reduced from $50,000 per year to $900 per month, less than a quarter of his previous salary. Based on the facts before us, a jury could reasonably find that plaintiff's decision to retire and to become an independent contractor was not voluntary in any meaningful sense.

■ Defendants further contend that plaintiff cannot make out a prima facie case of age discrimination because he has failed to show that he was treated less favorably than any similarly situated individuals. In response, plaintiff points to the fact that two broadcasters, "Big Ron" O'Brien and Bob Charger, who are 18 and 20 years younger than plaintiff, respectively, began working as weekday afternoon hosts (plaintiff's former position) when the station's weekday schedule changed from music of the 1950's and early 1960's ("pre-Beatles") to music of the late 1960's and 1970's ("post-Beatles"). There is some dispute as to when Lit's schedule changed from weekdays to weekends in relation to when the younger broadcasters began working as afternoon hosts. On the record before us, genuine issues of material fact exist as to whether the younger individuals were similarly situated and were treated more favorably by defendants.

■ Next, we examine whether defendants have produced evidence that the alleged adverse employment action was taken for a legitimate, nondiscriminatory reason. *Simpson,* 142 F.3d at 644 n. 5. According to defendants, plaintiff's on-air schedule and salary were reduced in connection with format innovations designed to derive additional revenue for the station. Defendants maintain that the determination that plaintiff was associated with a particular genre of music in connection with the station's musical format change was based on objective industry research conducted regarding consumer demand which in no way referenced plaintiff's age nor was ever linked to his age. Defendants have borne their burden to produce a legitimate non-discriminatory reason for reducing plaintiff's on-air schedule and salary.

■ Finally, we must examine whether plaintiff can demonstrate that defendants' proffered reason was a pretext for discrimination. In order to do so, plaintiff must set forth evidence to allow a fact finder reasonably either to: "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Jones v. School Dist. of Philadelphia,* 198 F.3d 403, 413 (3d Cir.1999). "The nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Id.*

In an effort to demonstrate that defendants' proffered reasons are pretextual, plaintiff points to Scaglione's deposition testimony in which he states that when the station made programming changes, "the determination was made for [plaintiff] to have a specialty show on the weekend for the [pre-Beatles] music that he was most known for." Scaglione Dep. at 45. Plaintiff contends that defendants' decision to move him to the weekends when the weekday programming changed from pre-Beatles to post-Beatles music reflects an age-based stereotype that an older broadcaster would not fit on a show featuring post-Beatles music. He argues that this stereotypical bias is highlighted by the fact that the two disc jockeys who were hired to fill

the weekday shows are significantly younger than plaintiff.

██ Making all reasonable inferences from the evidence in the light most favorable to plaintiff, we find that whether defendants' reasons for reducing plaintiff's on-air schedule and salary and assigning him to the weekend pre-Beatles show were motivated by discriminatory animus is a question for the jury.

Accordingly, we will deny the motion for summary judgment by defendants for plaintiff's age discrimination claim under the ADEA. We, of course, express no view on the strength or merits of plaintiff's allegations.

## V.

Defendants also move for summary judgment on plaintiff's ADA claim. To prevail on this disability claim, a plaintiff must prove that:

> (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.

*Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir.2004) (internal citations and quotations omitted). Under the ADA,

> The term "disability" means, with respect to an individual—
>
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or

> (C) being regarded as having such an impairment.

42 U.S.C.A. § 12102(2).

Plaintiff acknowledges in his deposition that he has a "mild" form of Parkinson's that causes his left hand to shake a little bit and causes him to slow down when walking but does not affect his work performance or preclude him from engaging in any activity. Lit Dep. at 30, 48–49. Although plaintiff concedes that his condition does not substantially limit his ability to perform his job, he argues that defendants perceived that his condition did or would impair his on-air performance. Pl.'s Resp. at 16; *see* 42 U.S.C.A. § 12102(2)(B). Nevertheless, plaintiff admits in his deposition that no one at the station, including Scaglione, ever said anything to him about his Parkinson's Disease. Lit Dep. at 49. He further concedes that no one at the station perceived him as disabled. Lit. Dep. at 46.

██ Reviewing the evidence in the light most favorable to plaintiff, we find that he cannot establish that he is disabled within the meaning of the ADA. *See* 42 U.S.C. § 12102(2). The only evidence plaintiff offers to support his contention that defendants perceived him as disabled is the fact that Scaglione knew that plaintiff suffered from Parkinson's Disease. Lit Dep. at 50. "The mere fact that an employer is aware of an employee's impairment, however, does not demonstrate that the employer regarded the employee as disabled." *Yudkovitz v. Bell Atlantic Corp.*, Civ.A. No. 02–3029, 2004 WL 178330, at *7 (E.D.Pa. Jan. 12, 2004) (citations omitted). Because plaintiff has failed to establish a prima facie case of disability discrimination, we will grant the motion of defendants for summary judgment as it relates to this claim under the ADA.

## VI.

 Finally, Counts III and IV of the complaint allege age and disability discrimination in violation of the PHRA. Our Court of Appeals has found that PHRA age and disability discrimination claims are considered under the same standards that apply to ADEA and ADA claims. *See Connors*, 160 F.3d at 972(age); *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 568 n. 2 (3d Cir.2002) (disability). Thus, we will deny defendants' summary judgment motion as it relates to the age claim under the PHRA and grant the motion with respect to the disability claim under the PHRA.

### ORDER

AND NOW, this 8th day of June, 2005, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendants for summary judgment is GRANTED in part and DENIED in part;

(2) the motion of defendants for summary judgment as to plaintiff's disability discrimination claims is GRANTED; and

(3) the motion of defendants for summary judgment as to plaintiff's age discrimination claims is DENIED.