[No. G041070. Fourth Dist., Div. Three. Nov. 30, 2009.]

MANUEL BARBOSA, Plaintiff and Appellant, v.
IMPCO TECHNOLOGIES, INC., Defendant and Respondent.

Counsel

Gould & Associates, Aarin A. Zeif and Michael A. Gould for Plaintiff and Appellant.

Brian G. Saylin and Marvin D. Mayer for Defendant and Respondent.

Opinion

**SILLS, P. J.**—Manuel Barbosa appeals from the adverse judgment on his complaint for wrongful termination after the superior court granted the motion for nonsuit by defendant IMPCO Technologies, Inc. He contends the trial court improperly found there was no public policy protecting a mistaken but good faith claim to overtime wages. We agree. The public policy in favor of the employer's duty to pay overtime wages protects an employee from termination for making a good faith but mistaken claim to overtime. The case must be reversed and remanded for a jury determination of the questions of Barbosa's good faith and IMPCO's reason for his termination.

FACTS

Barbosa started working at IMPCO as a carburetor assembler. At the time of his termination, in June 2007, he worked as a "cell leader" supervising up to eight other carburetor assemblers. He was paid by the hour; sometimes he and the other employees worked overtime.

Barbosa testified that in June 2007, two of the employees in his cell told him they were missing two hours of overtime. After he talked with them, he thought he also was missing two hours of overtime, "[b]ecause some employees coming to me, and they told me they're missing two hour

overtime starting Tuesday, [May 29]." The payroll administrator testified Barbosa came to her department on June 8 and told her that "he worked overtime, and four or five of his other employees also worked overtime, and he believe[d] that clock was wrong, and that's maybe the reason they did not get paid overtime." The payroll administrator looked at the timecard report and saw that it did not reflect any unpaid overtime. She told Barbosa, "No one has complained about the time clock being wrong. So please make a copy, go to the supervisor, and tell him to approve the overtime."

Barbosa spoke to his supervisor, Jaime DeSantos, and told him he and the other employees in his cell were each missing two hours of overtime. DeSantos said he would approve the missing hours because he "just trusted [Barbosa's] call at that time." The payroll administrator got DeSantos's verbal approval and paid all the employees in Barbosa's cell for two extra hours of overtime.

The payroll administrator thought "something doesn't make sense" because "no one complained about the time clock" and "we never had [a] problem." The company had had occasional problems with a prior timeclock system, but a new system had been installed at the beginning of May and it had been working correctly with no complaints. So the payroll administrator spoke to the human resources manager, who ran the report from the scans at the security entrance gate and compared that report with the timecard report. The gate report showed Barbosa and the others could not have worked the overtime that Barbosa claimed.

One of the employees in Barbosa's cell, Bertha Sattarzadegan, testified Barbosa came to her and said that two other employees in their cell claimed they worked overtime on May 29 and 30. Barbosa told her to review her check to make sure the hours were correct. They had all worked the same hours, and Sattarzadegan did not think they had worked extra overtime. She went to the human resources manager and told her she should not be paid for the extra overtime because she had not worked those hours.

On June 13, Barbosa was called to a meeting with DeSantos, the payroll administrator, the human resources manager, and the operations manager, Arshad Atlaf. Atlaf asked Barbosa if he was sure he and his cell worked overtime as he claimed; Barbosa said yes. Fifteen minutes later, Atlaf met with Barbosa again and showed him the gate report. Barbosa then said, "Well, I confuse. And sorry, you know, it's for the people coming to me and told me that I confuse."

When Barbosa got the paycheck that included the extra overtime, he went to the payroll department and offered to pay the money back. The payroll administrator told him she could not change anything and sent him to human resources, where he again offered to pay the money back. Barbosa was terminated on June 19, 2007. He testified Atlaf told him he was terminated for cheating the company. The payroll administrator testified Barbosa was terminated for falsifying time records. None of the other employees in Barbosa's cell was terminated; the overtime money was "eventually taken back" from them.

After Barbosa rested, IMPCO moved for nonsuit. The trial court initially denied the motion, finding there was a public policy that protected an employee from making a good faith claim for time he believed he had worked. IMPCO then called the human resources manager, who had previously been called on behalf of Barbosa, and she testified in more detail about the first meeting Barbosa had with her, the payroll administrator, DeSantos, and Atlaf. She testified that Atlaf asked Barbosa, "[I]f we have evidence to show that you didn't work the overtime, are you still claiming that you worked the overtime?" Barbosa said yes, without any doubt or hesitancy. Atlaf then reminded Barbosa "that the company does not tolerate any stealing from the company. And claiming you worked overtime when you didn't is stealing from the company." Atlaf asked again, "Are you sure you worked the overtime?" Barbosa responded yes. After the human resources manager completed her testimony, the court recessed for the weekend.

On Monday morning, the court told counsel it had "strong second thoughts" about its ruling on the nonsuit motion. After extensive discussion with counsel, the court changed its mind and granted the nonsuit. "I will accept plaintiff's version. It still comes down to a question of law. Good faith belief turns out to be wrong; termination thereafter of an at-will employee." The court continued, "We know the employer promptly paid the claim, thereafter, did an investigation, found out [Barbosa] was wrong. [¶] I don't see that there's a public policy that requires the employer to then make a determination whether this was good faith, not good faith, and require[s] the employer then to continue to employ this employee, who from [its] perspective made an unjustified claim for monies."

## DISCUSSION

Barbosa concedes he was mistaken about his claim to unpaid overtime but contends the claim was based on a reasonable good faith belief that he was entitled to it. He argues he presented sufficient evidence to support his claim

and the jury should be able to decide whether his claim was made in good faith and whether IMPCO terminated him for making that claim or for falsifying timecards. We agree.

After the plaintiff has completed the presentation of his case, the defendant may move for nonsuit. (Code Civ. Proc., § 581c, subd. (a).) The motion shall be granted if the court determines that the plaintiff's evidence is insufficient to support a jury verdict in his favor. (*Stonegate Homeowners Assn. v. Staben* (2006) 144 Cal.App.4th 740, 746 [50 Cal.Rptr.3d 709].) But a trial court must proceed with caution when making that determination because a nonsuit precludes the jury's consideration of the case. (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838 [206 Cal.Rptr. 136, 686 P.2d 656].) When we review the granting of a motion for nonsuit, we must view the evidence in the light most favorable to the plaintiff, resolving all presumptions, inferences and doubts in his favor. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948].) After having done so, we will not sustain the judgment for the defendant unless it is required as a matter of law. (*Ibid.*)

We cannot say that IMPCO was entitled to judgment as a matter of law at the end of Barbosa's case. As we explain, public policy protects Barbosa from being terminated for making a good faith claim to overtime. And he presented evidence sufficient to support a jury finding that the claim was made in good faith.

■ The common law recognizes the right of an at-will employee to bring an action in tort against his employer for termination of employment that violates a fundamental public policy. "In the last half century the rights of employees have not only been proclaimed by a mass of legislation touching upon almost every aspect of the employer-employee relationship, but the courts have likewise evolved certain additional protections at common law. The courts have been sensitive to the need to protect the individual employee from discriminatory exclusion from the opportunity of employment whether it be by the all-powerful union or employer. [Citations.] This development at common law shows that the employer is not so absolute a sovereign of the job that there are not limits to his prerogative." (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178 [164 Cal.Rptr. 839, 610 P.2d 1330].)

To maintain a wrongful discharge action, however, the employee must have been wronged in a way that affects more than his immediate interest. "Determining whether a claim involves a matter of public policy as opposed

to an ordinary dispute between the employer and employee depends on whether the matter affects society at large, whether the policy is sufficiently clear, and whether it is fundamental, substantial, and well established at the time of the termination. [Citation.]" (*Scott v. Phoenix Schools, Inc.* (2009) 175 Cal.App.4th 702, 708 [96 Cal.Rptr.3d 159].)

■ The duty to pay overtime wages is a well-established fundamental public policy affecting the broad public interest. "California courts have long recognized wage and hours laws 'concern not only the health and welfare of the workers themselves, but also the public health and general welfare.' [Citation.] . . . [O]ne purpose of requiring payment of overtime wages is ' " 'to spread employment throughout the work force by putting financial pressure on the employer . . . .' " ' [Citation.] Thus, overtime wages are another example of a public policy fostering society's interest in a stable job market. [Citation.] Furthermore, . . . the Legislature's decision to criminalize certain employer conduct reflects a determination the conduct affects a broad public interest. . . . Under Labor Code section 1199 it is a crime for an employer to fail to pay overtime wages as fixed by the Industrial Welfare Commission." (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1148–1149 [37 Cal.Rptr.2d 718].) If an employer discharges an employee for exercising his right to overtime wages, the employee will have a viable cause of action for wrongful termination. (*Ibid.*)

An employee's good faith but mistaken belief is protected from employer retaliation in the whistleblowing context. In *Collier v. Superior Court* (1991) 228 Cal.App.3d 1117 [279 Cal.Rptr. 453], an employee alleged he suspected that other employees were illegally shipping valuable promotional products to unauthorized recipients in exchange for bribes or kickbacks. He reported his suspicions to the employer several times. He was fired shortly thereafter, purportedly for inadequate job performance. The employee alleged a cause of action for wrongful termination, claiming he "actually was terminated in retaliation for checking on, trying to prevent, and reporting possible illegal conduct to" his employer. (*Id.* at pp. 1120–1121.) The trial court sustained the employer's demurrer to the complaint. Reversing, the Court of Appeal found reports "about reasonably based suspicions of ongoing criminal conduct by coworkers" was in the public interest; thus, the retaliatory discharge of an employee for making such reports was the proper basis for a wrongful termination cause of action. (*Id.* at p. 1125.)

Citing *Collier*, the Supreme Court held in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66 [78 Cal.Rptr.2d 16, 960 P.2d 1046] that a plaintiff's failure to prove an actual violation of law by his employer did not defeat the

wrongful termination cause of action. "[A]n employee need not prove an actual violation of law; it suffices if the employer fired him for reporting his 'reasonably based suspicions' of illegal activity." (*Id.* at p. 87.) The Supreme Court's view was underscored by *Freund v. Nycomed Amersham* (9th Cir. 2003) 347 F.3d 752, which involved an employee who was fired for reporting perceived health and safety violations in the workplace. The employee brought a wrongful termination action based on Labor Code section 6310, which prohibits employer retaliation against an employee who complains about conditions affecting employee safety or health. "The public policy behind § 6310 is not merely to aid the reporting of actual safety violations . . . ; it is also to prevent retaliation against those who in good faith report working conditions they believe to be unsafe. . . . As long as the employee makes the health or safety complaint in good faith, it does not matter for purposes of a wrongful termination action whether the complaint identifies an actual violation of other workplace safety statutes or regulations." (*Freund,* at p. 759.)

It follows that the same result should obtain when an employee exercises his statutory right to overtime wages out of a reasonable good faith belief he is entitled to it, notwithstanding the later discovery that he is wrong. Any other conclusion would open the door to employee intimidation and chill the exercise of statutory rights.

Barbosa presented evidence that he had a reasonable good faith belief he was entitled to overtime. Under the previous timeclock system, mistakes in timekeeping had been made; the new system had been in place less than a month. Barbosa's coworkers convinced him the overtime was unpaid, and he in turn convinced DeSantos. He testified he was confused. In fact, the trial court acknowledged Barbosa had presented sufficient evidence to support a good faith belief when it granted the nonsuit.

■ IMPCO argues Barbosa cannot prove he was terminated for making a claim for overtime, asserting he was terminated for misrepresenting that he worked overtime when he did not. IMPCO contends it is not a violation of public policy to fire an employee for lying and cheating his employer. IMPCO misses the point. Barbosa must prove he had a reasonable good faith belief he was entitled to overtime wages and that IMPCO terminated him because he claimed overtime based on that reasonable good faith belief. If Barbosa proves he had a reasonable good faith belief in his right to overtime, ipso facto he did not attempt to cheat IMPCO. Because Barbosa presented sufficient evidence to support both elements in his case-in-chief, the case should have been allowed to progress to its conclusion and be submitted to a jury.

## DISPOSITION

The judgment is reversed and the case is remanded for further proceedings.

Rylaarsdam, J., and Moore, J., concurred.