Filed 1/11/21  Root v. State of California CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JAMES ROOT, | |
| Plaintiff and Appellant, | E072316 |
| v. | (Super.Ct.No. RIC1721653) |
| STATE OF CALIFORNIA et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Randall S. Stamen, Judge.  Affirmed.

Artiano Shinoff, Paul V. Carelli, IV, and Abbey M. Jahnke for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Danielle F. O'Bannon, Senior Assistant Attorney General, Richard F. Wolfe and Edward P. Wolfe, Deputy Attorneys General, for Defendants and Respondents.

James Root found his way onto the freeway blocked by a closed onramp.  He spotted a police car, and it seemed like a good idea at the time to follow it.  This brought

1

him, inadvertently, into a construction zone. When he stopped there, California Highway Patrol Officer A. Ramborger approached him and berated him, calling him a "[f]ucking retard" and asking whether he thought he was "[f]ucking [s]pecial."

Root therefore filed this action against Officer Ramborger and against the State of California by and through the California Highway Patrol (collectively State), asserting causes of action for intentional and negligent infliction of emotional distress. The State filed a demurrer, which the trial court sustained without leave to amend.

Root appeals. We will affirm. Root's cause of action for intentional infliction of emotional distress fails because it does not allege any sufficiently outrageous conduct. His cause of action for negligent infliction of emotional distress fails because it does not allege any underlying duty.

I

STATEMENT OF FACTS

Consistent with the standard of review (see part III, *post*), we assume the following facts, taken from the operative complaint, are true.

On October 20, 2016, Root was trying to get on the I-215 freeway at an onramp near Perris. Due to construction, however, the onramp was closed. There were no detour signs.

Just then, a police car drove past Root. He followed it because he figured it knew where to go. Instead, he found himself in an unmarked construction zone; several

2

California Highway Patrol officers were also there. Root stopped.[1] Officer Ramborger walked up to him and yelled, "'You are a [f]ucking retard' and 'Do you think you are [f]ucking [s]pecial' or words to that effect, in addition to other obscenities."

Root was "emotionally distraught, humiliated, embarrassed and traumatized." He was particularly humiliated because he happened to be talking to a friend on his speakerphone, and the friend could hear Officer Ramborger. He backed up and left.

II

STATEMENT OF THE CASE

Root filed this action in 2017. The operative (first amended) complaint asserted two causes of action, for intentional infliction of emotional distress and negligent infliction of emotional distress.

The State filed a demurrer. It argued that:

1. With respect to both causes of action:

a. Officer Ramborger's conduct was absolutely privileged under Civil Code section 47.

b. Officer Ramborger was entitled to governmental immunity for discretionary acts under Government Code section 820.2.

c. Officer Ramborger was entitled to governmental immunity for law enforcement under Government Code section 820.4.

---

[1] In his brief, Root claims that he stopped because the police car ahead of him stopped, and that Officer Ramborger was the driver of that police car. None of this is alleged in the complaint. In any event, it is not material.

3

2. With respect to the cause of action for intentional infliction of emotional distress:

    a. Officer Ramborger's conduct was not sufficiently outrageous.

    b. Root's emotional distress was not sufficiently severe.

3. With respect to the cause of action for negligent infliction of emotional distress, Officer Ramborger did not breach any duty of care.

After hearing argument, the trial court sustained the demurrer without leave to amend. It ruled that Officer Ramborger was immune under both Government Code section 820.2 and 820.4. With regard to the intentional infliction of emotional distress cause of action, it also ruled that Officer Ramborger's conduct was not sufficiently outrageous. With regard to the negligent infliction of emotional distress cause of action, it also ruled that Officer Ramborger did not breach any duty of care. Accordingly, it entered a judgment of dismissal.

III

STANDARD OF REVIEW

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to

4

constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse. [Citation.]"  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

Our standard of review is de novo.  (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)

Preliminarily, Root has not addressed all of the grounds that the State asserted in its demurrer.  He addresses only those grounds on which the trial court relied, plus the State's argument that his emotional distress was not sufficiently severe.  This leaves the State's contention that Officer Ramborger had an absolute privilege under Civil Code section 47.

"A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.  [Citations.]"  (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)  "'A judgment or order of the lower court is *presumed correct*. . . .  [E]rror must be affirmatively shown. . . .' [Citations.]"  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  "Issues not raised in the appellant's opening brief are deemed waived or abandoned.  [Citation.]"  (*W.S. v. S.T.* (2018) 20 Cal.App.5th 132, 149, fn. 7.)  As Root has *not* argued that Officer Ramborger's actions were *not* absolutely privileged, we may affirm the judgment for this reason alone.

We proceed to discuss other grounds for affirmance, but only in the alternative.

5

IV

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:  OUTRAGEOUSNESS

A cause of action for intentional infliction of emotional distress requires, among other things, "'"""'"extreme and outrageous conduct by the defendant . . . ."'"'"'"  [Citations.] A defendant's conduct is 'outrageous' when it is so '""extreme as to exceed all bounds of that usually tolerated in a civilized community.'"'"  [Citation.]"  (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)  "Liability for intentional infliction of emotional distress '"does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." [Citation.]'  [Citations.]"  (*Id.* at p. 1051.)

"The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.  There is no occasion for the law to intervene in every case where some one's feelings are hurt.  There must still be freedom to express an unflattering opinion, *and some safety valve must be left through which irascible tempers may blow off relatively harmless steam . . . .*'  [Citations.]"  (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496.)

"In order to avoid a demurrer, the plaintiff must allege with 'great[] specificity' the acts which he or she believes are so extreme as to exceed all bounds of that usually tolerated in a civilized community.  [Citation.]"  (*Vasquez v. Franklin Management Real Estate Fund, Inc.* (2013) 222 Cal.App.4th 819, 832.)  Whether conduct is outrageous "is

6

'usually' a question of fact, [but] many cases have dismissed intentional infliction of emotional distress cases on demurrer, concluding that the facts alleged do not amount to outrageous conduct as a matter of law. [Citations.]" (*Barker v. Fox & Associates* (2015) 240 Cal.App.4th 333, 356.)

For example, in *Hughes v. Pair*, *supra*, 46 Cal.4th 1035, the defendant was a trustee of the plaintiff's son's trust. They became embroiled in litigation over the trust. (*Id*. at p. 1039.) In a phone call, the defendant sexually harassed the plaintiff. "[D]efendant called plaintiff 'sweetie' and 'honey,' and said he thought of her 'in a special way, if you know what I mean.'" (*Id*. at p. 1040.) He offered to do her a favor if she was "'nice'" to him. (*Ibid*.) He added, "'Here's my home telephone number and call me when you're ready to give me what I want.'" (*Ibid*.) The next day, when they met in person, the defendant said, "'I'll get you on your knees eventually. I'm going to fuck you one way or another.'" (*Ibid*.) The Supreme Court held that this was not sufficiently outrageous. "Viewed in the context of plaintiff's legal battles, over a five-year span, with defendant and the two other trustees regarding their allocation of the trust funds, defendant's inappropriate comments fall far short of conduct that is so 'outrageous' that it ""exceed[s] all bounds of that usually tolerated in a civilized community.'"" [Citation.]" (*Id*. at p. 1051.)

Officer Ramborger's alleged conduct was even less outrageous than that of the defendant in *Hughes*. It lasted only minutes, rather than over the course of a couple of days. It was in response to Root's conduct of entering a construction zone — however

7

innocently — when he was not supposed to be there, and it was Officer Ramborger's job to keep him out of there. And, while the conduct was profane and insulting, it was not threatening, as in *Hughes*. Admittedly, unlike in *Hughes*, Root and Officer Ramborger did not have a prior history of litigation. Nevertheless, precisely because they were strangers to each other, Root could not reasonably fear continued abuse.

Root cites *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493 for the proposition that "a person in authority . . . us[ing] epithets against a subservient citizen based upon a protected classification" constitutes outrageous conduct.

In *Alcorn*, allegedly, a foreman got angry with a Black truck driver whom he supervised and said, "'You goddam "[N-word]s" are not going to tell me about the rules. I don't want any "[N-word]s" working for me. I am getting rid of all the "[N-word]s"; go pick up and deliver that 8-ton roller to the other job site and get your pay check; you're fired.'" (*Alcorn v. Anbro Engineering, Inc.*, *supra*, 2 Cal.3d at pp. 496-497.)

The Supreme Court held, "Plaintiff has alleged facts and circumstances which reasonably could lead the trier of fact to conclude that [the foreman's] conduct was extreme and outrageous, having a severe and traumatic effect upon plaintiff's emotional tranquility. Thus, according to plaintiff, [the foreman], standing in a position or relation of authority over plaintiff, aware of his particular susceptibility to emotional distress, and for the purpose of causing plaintiff to suffer such distress, intentionally humiliated plaintiff, insulted his race, ignored his union status, and terminated his employment, all without just cause or provocation. Although it may be that mere insulting language,

8

without more, ordinarily would not constitute extreme outrage, the aggravated circumstances alleged by plaintiff seem sufficient to uphold his complaint as against [a] general demurrer." (*Alcorn v. Anbro Engineering, Inc.*, *supra*, 2 Cal.3d at pp. 498-499.)

*Alcorn* is significantly distinguishable in two respects.

First, we may assume, without deciding, that the case applies not just to supervisor or employer defendants, but more generally to any defendant in a position of authority. *Alcorn* accepted, however, that "mere insulting language, without more, ordinarily would not constitute extreme outrage . . . ." (*Alcorn v. Anbro Engineering, Inc.*, *supra*, 2 Cal.3d at p. 499.) There, the supervisor not only insulted the driver, but also terminated his employment. Here, Officer Ramborger's conduct consisted of words only; he did not actually exercise his authority in any analogous way, such as by arresting Root.

Root asserts that "Officer Ramborger's presence essentially amounted to a police stop." It is not inferable from any of the facts alleged in the complaint that Officer Ramborger did anything that would make Root reasonably believe that he was not free to leave. (See *Michigan v. Chesternut* (1988) 486 U.S. 567, 573 ["[T]he police can be said to have seized an individual 'only if . . . a reasonable person would have believed that he was not free to leave.' [Citation.]"].) To the contrary, the complaint alleged that Root backed up his vehicle and left.

Second, we may similarly assume, without deciding, that what Root calls the "R-word" can be as outrageous as the "N-word." In *Alcorn*, however, the driver was, in

9

fact, Black. Here, Root does not allege that he was, in fact, developmentally disabled. An insult that fits stings far more than one that does not.

Root offers to allege that he "suffers from mental health issues," including "severe anxiety, panic disorder, cognitive impairment, and vertigo." That is still not the same thing as a developmental disability. Moreover, he does not allege that his condition was apparent to Officer Ramborger, nor that he reasonably believed that Officer Ramborger was referring to his mental health. The only reasonable interpretation is that Officer Ramborger was using a crude metaphor to say that Root was driving in a stupid manner.

The trial court therefore correctly ruled that the complaint failed to state a cause of action for intentional infliction of emotional distress.

V

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS: DUTY

"Negligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply. The existence of a duty is a question of law. [Citation.]" (*Huggins v. Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124, 129.)

"[T]here is no duty to avoid negligently causing emotional distress to another, and . . . damages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff. [Citation.]" (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984.) "That duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship. [Citation.]" (*Id*. at p. 985.)

10

"[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of *some other legal duty* and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests. [Citations.]" (*Potter v. Firestone Tire & Rubber Co.*, *supra*, 6 Cal.4th at p. 985, italics added.)

Root does not claim that Officer Ramborger assumed any duty to him.

In regard to a duty imposed by law, Root notes that "a duty of care does arise when an officer engages in 'an affirmative act which places [a] person in peril or increases the risk of harm . . . .' [Citation.]" (*Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 717, italics omitted [officer stopped vehicle and directed it to park in the median, where it was hit by another vehicle].) Here, however, Officer Ramborger did not place Root in peril or increase the risk of harm to him in any way o*ther than* by inflicting emotional distress on him. He did not breach any *other* duty — much less one that threatened physical injury.

In regard to a special relationship, Root cites *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243. There, the court noted what it called the "public duty rule," namely that while police officers have a duty to the general public, they have no duty to protect individuals. (*Id*. at pp. 274-276.) However, it also noted "a 'narrow exception' for unusual police conduct that creates a 'special relationship' between the police officer and

11

an individual member of the public. [Citation.]" (*Id*. at pp. 276-277.) Police officers have been held to have the necessary special relationship when they have "made misrepresentations that induced a citizen's detrimental reliance [citation], placed a citizen in harm[']s way [citations], or lulled a citizen into a false sense of security and then withdrew essential safety precautions [citation]." (*Id*. at p. 280.) Root claims Officer Ramborger "placed [him] in harm's way by angrily disparaging him."

In this context, "in harm's way" refers to harm from some other source, not harm inflicted by the police officer. (See *Bastian v. County of San Luis Obispo* (1988) 199 Cal.App.3d 520, 529; see, e.g., *Carpenter v. City of Los Angeles* (1991) 230 Cal.App.3d 923, 931-932 [police created special relationship with witness to crime by assuring him that he was in no danger and by failing to warn him of threats against him].) This follows from the fact that a special relationship is an *exception* to the public duty rule; hence, it gives rise to a duty to *protect*. If a special relationship arose every time a police officer personally inflicted emotional distress, that would make the general rule that there is no duty to avoid negligently causing emotional distress inapplicable to police officers; the special relationship exception would always apply.

Finally, Root argues that, under these circumstances, there is a duty not to inflict emotional distress based on the factors identified in *Rowland v. Christian* (1968) 69 Cal.2d 108.

Civil Code section 1714, subdivision (a), as relevant here, provides: "Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care

12

. . . ." In *Rowland*, our Supreme Court stated: "Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy. [Citations.]

"A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Rowland v. Christian*, *supra*, 69 Cal.2d at pp. 112-113.)

Here, the general rule that there is no liability for the negligent infliction of emotional distress is arguably an exception to Civil Code section 1714. Root argues that, under the particular circumstances here — a police officer defendant, the use of the word "retard," etc., etc. — the *Rowland* factors dictate that this exception should not apply.

Under Supreme Court authority, however, the *Rowland* factors simply do not apply to a claim of negligent infliction of emotional distress. In *Thing v. La Chusa* (1989) 48 Cal.3d 644, Justice Broussard, dissenting, argued that, the court should analyze

13

whether the defendants were liable for negligent infliction of emotional distress using the *Rowland* factors. (*Id.* at p. 686-688 [dis. opn. of Broussard, J.].) The majority responded: "The dissent's suggestion that *Rowland v. Christian* . . . should extend to actions for negligent infliction of emotional distress lacks support in our decisions. Neither *Rowland v. Christian* nor the other cases cited by the dissent [citations] are cases in which damages for negligently inflicted emotional distress were in issue. Recovery for this type of damage, when no other injury is present, has never been subject only to the general principles of foreseeability applied in *Rowland v. Christian* that the dissent . . . would have us adopt here as the basis of liability." (*Id.* at p. 668, fn. 11; see also *Bird v. Saenz* (2002) 28 Cal.4th 910, 915 [*Thing* "expressly reject[ed] the suggestion that liability for [negligent infliction of emotional distress should be determined under the more general approach set out in *Rowland* . . . for identifying duties of care."]; *Krupnick v. Hartford Accident & Indemnity Co.* (1994) 28 Cal.App.4th 185, 199 ["As a matter of judicial precedent, *Rowland* had absolutely nothing to do with the negligent infliction of emotional distress."], some italics omitted.)

Admittedly, a handful of cases have applied the *Rowland* factors to a claim of negligent infliction of emotional distress, but only in the process of concluding that there was no duty. (*Steven F. v. Anaheim Union High School Dist.* (2003) 112 Cal.App.4th 904, 915; *Lawson v. Management Activities, Inc.* (1999) 69 Cal.App.4th 652, 657-660; *Klein v. Children's Hospital Medical Center* (1996) 46 Cal.App.4th 889, 896.) *Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195 considered the *Rowland*

14

factors (*id*. at pp. 208-210) only as an alternative ground, after acknowledging that "the California Supreme Court has ruled that there is no duty to avoid negligently causing emotional distress to another. [Citation.]" (*Id*. at p. 208.)

*Burgess v. Superior Court* (1992) 2 Cal.4th 1064 also considered the *Rowland* factors in analyzing a claim of negligent infliction of emotional distress. First, however, it held that the defendant *did* have a duty, arising out of a pre-existing relationship with the plaintiff. (*Id*. at pp. 1074-1078.) It then looked to *Rowland* in deciding whether to create an exception to that duty. (*Id*. at pp. 1079-1085.)

As far as we can tell, only one case has relied on the *Rowland* factors in concluding that there *was* a duty not to inflict emotional distress: *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856. In that case, police officers responding to the scene of a car accident took photographs of the decapitated body of an accident victim. The defendants then emailed the photos to others, resulting in the photos being widely posted on the Internet. (*Id*. at p. 865.) The appellate court held that, based on the *Rowland* factors, this breached a duty not to cause emotional distress to the decedent's relatives. (*Id*. at pp. 881-888.)

The court, however, had already held that that this was also an actionable invasion of the relatives' right to privacy. (*Catsouras v. Department of California Highway Patrol*, *supra*, 181 Cal.App.4th at pp. 868-874.) Given the availability of this well-established cause of action, which would support an award of emotional distress damages, we question the need to recognize a separate cause of action for negligent

15

infliction of emotional distress based solely on the *Rowland* factors. Those factors — foreseeability, moral blame, prevention of future harm, etc. — may well have indicated that there should be *some* duty, but a duty not to violate the plaintiff's privacy would seem adequate. To the extent that *Catsouras* is incompatible with this court's decision in *Krupnick v. Hartford Accident & Indemnity Co.*, *supra*, 28 Cal.App.4th 185, we decline to follow it.

We therefore conclude that we are not required to consider the *Rowland* factors. Our analysis can stop with the fact that there is no duty to avoid negligently causing emotional distress to another, and Officer Ramborger did not breach any other duty.

If only out of an excess of caution, however, we will analyze the *Rowland* factors, albeit briefly; we still conclude that there was no duty.

Foreseeability deserves little weight here. "'[I]t is clear that foreseeability of the injury alone is not a useful "guideline" or a meaningful restriction on the scope of [an action for damages for negligently inflicted emotional distress.]' [Citation.]" (*Burgess v. Superior Court*, *supra*, 2 Cal.4th at p. 1074, brackets in original.) In any event, when a policeman calls a citizen a "fucking retard," some emotional distress is foreseeable, but *serious* emotional distress is not.

Regarding the degree of certainty that the plaintiff suffered injury, emotional distress is all too easy to claim and all too hard to disprove. And regarding the moral blame attached to the defendant's conduct, name-calling, even when profane and "ableist," is more a breach of manners than a breach of morals.

16

Last but not least, the consequences of imposing a duty of care here would be dire. Police officers have many contacts with citizens, some of them heated. Strong, profane, and even insulting language can be a legitimate way of gaining control of a situation without violence. At a time when society is searching for ways to reduce the use of force by police, without endangering either them or the rest of us, trying to reduce their use of insults seems like a misallocation of resources.

And what would be the scope of this supposed duty? Would it apply only to slurs based on a protected characteristic? Or to any insult? Or to any failure to accord a citizen sufficient respect — and "sufficient" as measured by whom? Would it apply only to law-abiding citizens, or would the police also have to be careful how they address law-breakers (or suspected law-breakers, which it would seem Root was here)? And finally, would this duty apply only to law enforcement officers, or to everyone?

We decline to be the politeness police. All of the reasons why a cause of action for intentional infliction of emotional distress cannot be based on insults alone apply equally to negligent infliction of emotional distress. We conclude that Officer Ramborger did not breach any duty not to inflict emotional distress.

## VI

## DISPOSITION

The judgment is affirmed.  The State is awarded costs against Root.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

McKINSTER
J.

MILLER
J.

18